UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE FAULKES,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>ORBCOMM INC., JEROME B. EISENBERG, MARC J. EISENBERG, MARCO FUCHS, DENISE GIBSON, KAREN GOULD, TIMOTHY KELLEHER, and JOHN MAJOR,<br><br>　　　　　　　　Defendants. | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

　　Plaintiff George Faulkes ("Plaintiff"), by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

　　1.　　This is an action brought by Plaintiff against ORBCOMM Inc. ("ORBCOMM" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with ORBCOMM, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed acquisition (the "Proposed Transaction") of ORBCOMM by GI DI Orion Acquisition Inc. ("Parent") and GI DI Orion Merger Sub Inc. ("Merger Sub"), a wholly owned subsidiary of Parent (the "Proposed Transaction"). Parent is an affiliate of investment funds advised by GI Manager L.P. ("GI

1

Partners").

2. On April 7, 2021, ORBCOMM's Board caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with GI Partners. Pursuant to the terms of the Merger Agreement, Pursuant to the terms of the Merger Agreement, ORBOMM's stockholders will receive $11.50 in cash for each share of ORBCOMM common stock they own (the "Merger Consideration"), in an all cash transaction valued at $1.1 billion, including net debt, which is expected to close in the second half of 2021.

3. On May 27, 2021, in order to convince ORBCOMM public common shareholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading Definitive Proxy Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act scheduling a shareholder vote for the Proposed Transaction on July 8, 2021.

4. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) ORBCOMM's financial projections and (ii) the financial analyses conducted by the financial advisors of the Company, PJT Partners LP ("PJT Partners") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

5. It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the shareholder vote so ORBCOMM's shareholders can properly exercise their corporate voting rights.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to ORBCOMM's public common

shareholders sufficiently in advance of the upcoming shareholder vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

8. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, ORBCOMM's common stock trades on the Nasdaq Stock Market, which is also headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases). Moreover, ORBCOMM's proxy solicitor, Morrow Sodali LLC, financial advisor, PJT Partners, and legal advisor, Milbank LLP, are all headquartered in this District. Furthermore, GI Partners maintains an office in this District.

3

## PARTIES

10. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of ORBCOMM common stock.

11. Defendant ORBCOMM is a public company incorporated under the laws of Delaware with principal executive offices located at 395 W. Passaic Street, Rochelle Park, New Jersey 07662. ORBCOMM's common stock is traded on the Nasdaq Global Select Market under the ticker symbol "ORBC."

12. Individual Defendant Lloyd Carney has served as a member of the Board since September 2018 and is the Chairman of the Board.

13. Individual Defendant Jerome B. Eisenberg has served as a member of the Board since 2001.

14. Individual Defendant Marc J. Eisenberg has served as a member of the Board since 2002 and is the Company's Chief Executive Officer.

15. Individual Defendant Marco Fuchs has served as a member of the Board since 2001.

16. Individual Defendant Denise Gibson has served as a member of the Board since October 2018.

17. Individual Defendant Karen Gould has served as a member of the Board since June 2018.

18. Individual Defendant Timothy Kelleher has served as a member of the Board since March 2008.

19. Individual Defendant John Major has served as a member of the Board since April 2007.

20. The defendants identified in paragraphs 12 through 19 are collectively referred to

herein as the "Board" or the "Individual Defendants," and together with ORBCOMM, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

21. ORBCOMM is a global provider of industrial Internet of Things ("IoT") solutions, including network connectivity, devices, device management and web reporting applications. These solutions enable optimal business efficiencies, increased asset utilization and reduced asset write-offs, helping its customers to realize benefits on a worldwide basis. The Company's industrial IoT products and services are designed to track, monitor, control and enhance security for a variety of assets, such as trailers, trucks, rail cars, sea containers, power generators, fluid tanks, marine vessels, diesel or electric powered generators ("gensets"), oil and gas wells, pipeline monitoring equipment, irrigation control systems, and utility meters, in the transportation and supply chain, heavy equipment, fixed asset monitoring and maritime industries, as well as for governments. Additionally, ORBCOMM provides satellite Automatic Identification Service ("AIS") data services to assist in vessel navigation and a vehicle fleet management, as well as in-cab and vehicle fleet solutions in our transportation solution portfolio. The Company provides these services using multiple network platforms, including its own constellation of low-Earth orbit ("LEO") satellites and the accompanying ground infrastructure, as well as terrestrial-based cellular communication services. ORBCOMM also offers customer solutions utilizing additional satellite network service options obtained through service agreements with third-party mobile satellite providers.

22. ORBCOMM's customers include original equipment manufacturers ("OEMs"), such as Caterpillar Inc., Doosan Infracore America, Hitachi Construction Machinery Co., Ltd., John Deere, Komatsu Ltd., and Volvo Construction Equipment; vertical market technology integrators known as value-added resellers ("VARs") and international value-added resellers ("IVARs"), such

as American Innovations, and value-added solutions providers, such as Onixsat, Satlink and Sascar (collectively referred to as "MCPs"); and end-to-end solutions customers such as Carrier Corporation, C&S Wholesale, Canadian National Railways, CR England, Hub Group, Inc., JB Hunt Transport Services, Inc. ("JB Hunt"), KLLM Transport Services, Marten Transport, Prime Inc., Swift Transportation, Target, Tropicana, Tyson Foods, Walmart and Werner Enterprises.

23.     On April 7, 2021, ORBCOMM's Board caused the Company to enter into the Merger Agreement with GI Partners. Pursuant to the terms of the Merger Agreement, GI Partners, upon the terms and subject to the conditions set forth in the Merger Agreement, will acquire ORBCOMM for $1.1 billion in cash.  Specifically, ORBCOMM's stockholders will receive $11.50 in cash for each share of ORBCOMM common stock they hold.

24.     According to the April 8, 2021 press release announcing the Proposed Transaction:

**ORBCOMM ENTERS INTO AGREEMENT
TO BE ACQUIRED BY GI PARTNERS**

**ORBCOMM Stockholders to Receive $11.50 Per Share in Cash**

**Transaction Provides Significant Premium to ORBCOMM Stockholders**

**Rochelle Park, NJ, April 8, 2021** – ORBCOMM Inc. (Nasdaq: ORBC), a global provider of Internet of Things (IoT) solutions, today announced that it has entered into a definitive agreement to be acquired by GI Partners, a leading US-based investor in data infrastructure businesses, in an all-cash transaction that values ORBCOMM at approximately $1.1 billion, including net debt.

Under the terms of the agreement, ORBCOMM stockholders will receive $11.50 in cash per outstanding share of common stock upon closing of the transaction, representing a premium of approximately 52% to ORBCOMM's closing share price on April 7th and a 50% premium over the 90-day volume-weighted average share price through that date.

The investment by GI Partners will support ORBCOMM's strong momentum in the industrial IoT as it increases its investment in sales, marketing and technology innovation to accelerate growth, execute on its long-term strategic plan and global market expansion, and provide added flexibility as a privately-held company.

"This transaction will provide immediate and substantial value to ORBCOMM stockholders, reflecting the tremendous commitment and work of our employees and stakeholders. The partnership with GI Partners will provide us the opportunity to rapidly advance our long-term

strategy," said Marc Eisenberg, ORBCOMM's Chief Executive Officer. "GI Partners has an established track record of working with companies to accelerate growth, and we look forward to continuing to drive innovation, providing world-class service to our global customers and expanding our market share in the industrial IoT as a privately held company."

"ORBCOMM has a long history of innovation, providing mission-critical services to customers across the global logistics landscape and a broad range of other industries," said Mark Prybutok, Managing Director of GI Partners. "We are excited to work with the ORBCOMM team to take the business forward as IoT use cases continue to evolve and grow."

ORBCOMM's Board of Directors has unanimously approved the transaction and recommends that ORBCOMM's stockholders vote in favor of the transaction at the special meeting of ORBCOMM stockholders to be called in connection with the transaction. A special meeting of ORBCOMM's stockholders will be held as soon as practicable following the filing of a definitive proxy statement with the U.S. Securities and Exchange Commission (SEC) and subsequent mailing to its stockholders.

**Transaction Details**

The transaction is expected to close following the satisfaction of customary closing conditions, including approval by ORBCOMM stockholders and the receipt of required regulatory approvals.

Consistent with the Board's commitment to maximizing stockholder value, under the terms of the definitive merger agreement, ORBCOMM and its representatives may actively solicit and consider alternative acquisition proposals during a 30-day "go-shop" period that will expire on May 7, 2021. ORBCOMM has the right to terminate the definitive merger agreement with GI Partners to enter into a superior proposal subject to certain terms and conditions of the definitive merger agreement. There can be no assurance that this process will result in a superior proposal, and ORBCOMM does not intend to disclose developments with respect to the solicitation process unless and until it determines such disclosure is appropriate or is otherwise required.

The parties expect the transaction to close in the second half of 2021. Subject to and upon completion of the transaction, ORBCOMM will become a privately-held company and its common stock will no longer be listed on the Nasdaq Stock Market.

PJT Partners and Raymond James are acting as financial advisors to ORBCOMM, and Milbank LLP is acting as legal counsel. Evercore is acting as financial advisor to GI Partners, and Simpson Thacher & Bartlett LLP and Morgan, Lewis & Bockius LLP are acting as legal counsel.

(Emphasis in original).

**The Proxy Omits Material Information**

25. On May 27, 2021, Defendants filed a materially incomplete and misleading Proxy

with the SEC. The special meeting of ORBCOMM stockholders to vote on the Proposed Transaction is forthcoming. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

**Materially Misleading Statements and Omissions Regarding ORBCOMM's Financial Projections**

26.   The Proxy fails to provide material information concerning financial projections by ORBCOMM management and relied upon by the Board in recommending the Proposed Transaction and PJT Partners in its financial analysis to issue its fairness opinion. The Proxy discloses management-prepared financial projections for the Company which are materially misleading. The Proxy states that in connection with PJT Partners rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy should have, but fails to provide, certain information in the projections that ORBCOMM management provided to the Board and the financial advisors. Proxy pages 48-50.

27.   With respect to the Company Projections, the Proxy provides Adjusted EBITDA and Unlevered Free Cash Flows but not the line items comprising said metrics. In fact, the Proxy states that Adjusted EBITDA is comprised of Net Income that is disclosed, plus (i) total depreciation and amortization, (ii) interest and other (income) expense, (iii) income tax expense (benefit), and (iv) stock-based compensation ("SBC"), and further adjusted to eliminate the Company's noncontrolling interest in certain European entities, impairments and costs related to the Merger, which none of it is disclosed. Similarly, for Unlevered Free Cash Flows the Proxy states it is

calculated from Adjusted EBITDA (Post-SBC) that is disclosed, less capital expenditures, changes in net working capital and unlevered cash taxes, with appropriate adjustments for other cash items that are not disclosed.

28. The omission of this information renders the projections disclose by Defendants a mis-leading half-truth and thereby a direct violation of Section 14(a)..

29. Investors are concerned, perhaps above all else, with the projections and cash flows of the companies in which they invest and its calculation is key, especially when line items used to reduce its value are not disclosed.

30. For this reason, Courts have recognized that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

31. If a Proxy discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. *See Campbell v. Transgenomic, Inc.*, 916 F.3d 1121, 1124-1125 (8th Cir. 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases). Accordingly, Defendants have disclosed some of the information related to the projections relied upon by PJT Partners, but have omitted crucial line items and reconciliations. Thus, Defendants' omission renders the projections disclosed on page 48 of the Proxy misleading.

**Materially Incomplete and Misleading Disclosures Concerning PJT Partners' Financial Analyses**

32.     With respect to PJT Partners' *Discounted Cash Flow Analysis* for the Company, the Proxy also fails to disclose: (i) the projected terminal values for the Company; (ii) the Company's unlevered free cash flows for the period from March 31, 2021 through December 31, 2030; (iii) the inputs and assumptions underlying the use of perpetuity growth rates of 2.5% to 4.5%; (iv) the inputs and assumptions underlying the range of discount rates ranging from 9.0% to 10.0%, (v) the Company's weighted average cost of capital. Proxy pages 45-46.

33.     These key inputs are material to ORBCOMM shareholders, and their omission renders the summary of PJT Partners' *Discounted Cash Flow Analysis* incomplete and misleading. As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id.* As Professor Davidoff explains:

> *There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars*….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. *This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion* **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added). Without the above-mentioned information, ORBCOMM's shareholders cannot evaluate for themselves the reliability of PJT Partners's *Discounted Cash Flow Analysis*, make a meaningful determination of whether the implied equity value ranges reflect the true

value of the Company or was the result of an unreasonable judgment by PJT Partners, and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

34. With respect to PJT Partners' *Selected Precedent M&A Transactions Analysis* for the Company, the Proxy fails to disclose: disclose: (i) the individual multiples and metrics for the transactions observed in the analysis; (ii) the closing dates of the transactions; and (iii) the total values of the transactions. Proxy pages 44-45.

35. With respect to PJT Partners' *Selected Public Market Multiples Analysis*, the Proxy fails to disclose the individual multiples and metrics for the companies observed in the analysis. Proxy pages 43-44.

36. In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the upcoming shareholder vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote their shares in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to

solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

39. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40. The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

41. Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for ORBCOMM; and (ii) the valuation analyses performed by PJT Partners in support of its fairness opinion.

42. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

43. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The

Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that PJT Partners reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by PJT Partners, as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to, separately, review PJT Partners' analyses in connection with their receipt of the fairness opinions, question PJT Partners as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

44. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

45. ORBCOMM is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

46. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of ORBCOMM within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of ORBCOMM, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous

recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

51. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result

of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 1, 2021

**MONTEVERDE & ASSOCIATES PC**

By: */s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*